City Savings Bank v. Bidwell.

---

CITY SAVINGS BANK *vs.* BIDWELL and others.

When a question arises in our courts, upon a transaction which has occurred in another state, and there is nothing to show what the law of that state is, and the transaction is of such a nature as to raise no presumption one way or the other, the court will follow the law of this state.

Where a loan is made in the state of Connecticut, at a greater rate of interest than is allowed by the laws of this state, but no greater than the legal rate in Connecticut, the fact that the note given by the borrower, for the amount of the loan, is made payable in this state, will not render the transaction usurious and the note invalid.

In an action here, upon such a note, the contract will be treated as a foreign contract, and the burthen of proof is upon the defendant, to show that the transaction is contrary to the laws of Connecticut.

APPEAL from a judgment entered upon the report of a referee. The action was upon a promissory note made by the defendant Bidwell, on the 20th of July, 1855, for $738.92, payable to the defendant Parker, or order, eight months after date, at the Bank of New York, and indorsed by Parker. The following facts were found by the referee: That the promissory note sued on was signed by the defendant Bidwell, at the city of New York; that the defendant Parker there indorsed his name thereon as an accommodation indorser, for the use and benefit of said Bidwell; that the said note, when so signed and indorsed, was at said city of

New York delivered to Jared W. Post, to get discounted for the use and benefit of said Bidwell at the city of New Haven, in the state of Connecticut, where said Post then resided; that afterwards, and on the 20th day of August, 1855, Post presented said note to the plaintiffs, (a banking corporation of the state of Connecticut,) at their banking house in the city of New Haven, for discount, and represented to the officers of said bank that the note was a regular business note which had been given by Bidwell for stock or property purchased by him from Parker, and asked for such discount for the benefit of said Parker; that the officers of said bank, relying upon such representations, offered to discount the note at the rate of twelve per cent per annum, if Post would indorse the same; that Post consented so to do, and thereupon indorsed the note, which was then discounted by the plaintiff, who reserved and retained out of the principal sum of $739.67, the sum of $52.92 for the discount of said note, and paid Post the balance; that the sum so retained was at the rate of twelve per cent per annum upon the principal mentioned in said note. There was no allegation that usury was committed against the laws of the state of Connecticut, and no evidence was offered of the laws of that state upon the subject of interest on the loan and forbearance of money. The referee found, as matter of law, that the transaction was not affected by the laws of this state against usury, and that the defendants had not, nor had either of them, established any defense against said note; and that the plaintiffs were entitled to recover the amount thereof, with interest.

Judgment was accordingly entered in favor of the plaintiff, for the amount of the note, with interest and costs; and the defendants appealed.

*Mead & Taft*, for the plaintiffs. I. To maintain their defense, the defendants must show that there was an agree-

ment corruptly made between the plaintiff and the defendant Bidwell, that the plaintiff should loan to Bidwell said sum of $686 for the time stated, and should take his note therefor, reserving thereupon for *interest* the sum of $52.92. (2 *R. S. 4th ed.* 182, § 5. 2 *Parsons on Contracts,* 384, 405. *N. Y. Firemen Insurance Company* v. *Ely,* 2 *Cowen,* 704.) The case shows that there was no such agreement; that no such loan was made; that the note was not taken for a loan; and that no interest was reserved by or upon the note. The plaintiff discounted this note, as and for a business note, given by the maker to the payee for a consideration. Such a discounting of a note is a purchase of the note, and *not a loan of money.* The money paid is the *purchase price,* and *not money lent,* and of course the discount is *discount from the face of the note,* and *not interest.* (*Cram* v. *Hendricks,* 7 *Wend.* 569.) And although it turns out that, in fact, this note was not a business note, it does not make the money in the hands of Bidwell a *loan,* but *money had and received,* which the plaintiffs might have recovered back immediately after they discovered the falsity of the statements of Post made in that behalf. We invoke here another principle of law, to wit, the doctrine of estoppel, and say, that if the fact were otherwise than what we contend for, Post and Bidwell are estopped and concluded by the representations of Post as to the character of the note. Post is estopped by his own representations. (*Truscott* v. *Davis,* 4 *Barb.* 495.) Bidwell is estopped by the representations of Post, who was his agent. (*Smith's Mercantile Law,* 175. 2 *Kent,* 621, note, 7*th ed.*) And inasmuch as the note cannot be avoided for usury, by the maker, by reason of his being estopped so to do, Parker cannot show that the note was void because of usury between the plaintiffs and the maker of the note, and thus avoid his liability as indorser.

II. Could the defendants sustain the position that here was an agreement of loan and reservation of interest, they

City Savings Bank *v.* Bidwell.

must further show that the same was made in violation of the laws of this state. But in this case, if there was a loan and reservation of interest, the agreement for the same and the loan itself were made, and the note, if given for a loan and interest reserved thereupon or thereby, was given in the state of Connecticut, under and in sole reference to the laws of that state, and without any reference to the laws of the state of New York, and consequently our statute against usury does not extend to the transaction. The note had its inception in the state of Connecticut. (*Powell* v. *Waters*, 8 *Cowen*, 669.) It had a legal, valid inception there. For aught that appears or is claimed, or alleged even in this case, the note was discounted at the established legal rate of interest of that state. If there is any law there rendering the note void in its inception, because of the rate of interest reserved thereupon or thereby, there is nothing in the case to show it, and the court cannot take judicial notice of such law, if any such there be. (*Pomeroy* v. *Ainsworth*, 22 *Barb.* 120. *Davis* v. *Garr*, 2 *Seld.* 134. *Jacks* v. *Nichols*, 5 *Barb.* 40. *S. C. on appeal*, 1 *Seld.* 184.) The note, therefore, had a legal and valid inception in the state of Connecticut; and if valid there, it will not be pronounced usurious under our law, because it was drawn payable in this state, and the rate of interest taken was greater than is prescribed in this state. (2 *Kent*, 575–7, *marginal page*, 459. *Chapman* v. *Robertson*, 6 *Paige*, 627. 2 *Parsons on Contracts*, 95. *Pratt* v. *Adams*, 7 *Paige*, 632. *Parsons on Mer. Law*, 22, and notes. *Pomeroy* v. *Ainsworth*, 22 *Barb.* 128 and 129. *Davis* v. *Garr*, 2 *Seld.* 134. *Jacks* v. *Nichols*, 5 *Barb.* 40. *S. C. on appeal*, 1 *Seld.* 184.)

*Darlington & Hoffman*, for the appellants. I. The contract upon which this action is brought, if made within this state, and to be performed here, is confessedly *illegal* and *void*. It is, moreover, a *criminal offense* by the laws of this state. It cannot, therefore, be made the subject of an action in our courts. (2 *R. S.* 182, §§ 5, 14, 15, 4*th ed.*)

II. Assuming, for the moment, that this contract is to be governed by the laws of *Connecticut,* where it was made, and *not* by the laws of *New York,* where it was to be performed, the *onus* of averring and *proving* the law of Connecticut upon the subject of usury lay with the *plaintiffs,* and in the absence of such proof they are not entitled to recover. The plaintiffs, a foreign corporation, in seeking the aid of our courts to enforce a contract *illegal and criminal by our laws,* are bound to aver and prove *affirmatively* the facts which show this case to be an *exception* to the *lex fori,* as, for instance, that the contract was made elsewhere, and that by the law of the place where it was made it was legal and binding. (*Thatcher* v. *Morris,* 1 *Kern.* 437.) It is not incumbent upon the defendants to show that this contract, illegal by the laws of their own domicil and by the law of the *forum,* is also illegal by the law of the place where it was made. (*Id.*) The courts of this state, when called upon by a foreign creditor to enforce against our own citizens a contract confessedly illegal and void by our laws, will not *indulge* in *any presumptions* in favor of the foreign creditor, either that the contract was in fact made elsewhere, or that it was legal where it was made. (*Id.*)

III. In the absence of proof of the laws of another state where a contract, illegal by our laws but sought to be enforced in our courts, is alleged to have been made, the *legal presumption is* that the laws of that state *are the same as our own.* This must be so from the very *necessity* of the case, our courts in the case supposed having *no other rule* furnished them than the *lex fori* by which to determine the matters before them. This rule is well settled by authority, and is asserted and enforced as well upon grounds of natural reason and public policy as of necessity and positive law. (*Silleck* v. *French,* 1 *Smith's Am. Lead. Cases,* 519, *note,* 3d ed. *Robinson* v. *Dauchy,* 3 *Barb.* 20. *Sherrill* v. *Hopkins,* 1 *Cowen,* 103. *Starr* v. *Peck,* 1 *Hill,* 270. *Leavenworth* v. *Brockway,* 2 *Hill,* 201–3, *note. Legg* v. *Legg,* 8 *Mass.* 99. *Wood-*

*row* v. *O'Connor,* 28 *Vermont,* 776. *Thatcher* v. *Morris,* 1 *Kernan,* 437. *Bowen* v. *Newell,* 2 *Duer,* 602–605. *S. C. affirmed,* 3 *Kernan,* 290. *Story's Confl. of Laws,* 1011, *note* 1, 5*th ed. Dale* v. *Hopkins, N. Y. circuit, May,* 1857. *Harper* v. *Hampton,* 1 *Har. & J.* 687, 710. *Forsyth et al.* v. *Baxter et al.,* 2 *Scammon,* 10, 12.)

IV. The note in suit was, however, dated in New York, made in New York, by parties resident there, and was in terms and on its face expressly *payable in the city of New York.* It was therefore, by every well settled rule and under all the authorities, *a New York contract,* and as such, no matter where sought to be enforced, but *especially in the courts of New York,* is to be governed, and its validity, obligation and effect are to be determined *solely by the laws of this State.* (*Robinson* v. *Bland,* 2 *Burrow,* 1077. *Story on Prom. Notes,* §§ 164, 165, 166. *Story on Bills,* §§ 129, 146, 147, 148, 149. *Story's Confl. of Laws,* 280, 292, 5*th ed. Edwards on Bills,* 177, 178, *and cases cited. Silleck* v. *French,* 1 *Smith's Am. Lead. Cases,* 519, *notes. Fanning* v. *Consequa,* 17 *John.* 511. *Sherrill* v. *Hopkins,* 1 *Cowen,* 103. *Jacks* v. *Nichols,* 3 *Sandf. S. C. R.* 313. *S. C. on appeal,* 1 *Selden,* 178. *Prentice* v. *Savage,* 13 *Mass.* 23. *Hyde* v. *Goodnow,* 3 *Comst.* 269. *Peck* v. *Mayo,* 14 *Vermont,* 33. *Dale* v. *Hopkins, N. Y. circuit, May,* 1857, *before Justice Sutherland.*)

V. The proposition asserted by the referee, in his opinion, that parties contracting in one state for a loan of money to be repaid in another, may agree for the rate of interest allowed by either, must be understood with this important qualification, that if the contract is illegal and void by the law, either of the place where it is made or of that where it is to be performed, it is void in *both* places, and can be enforced in neither. (*Edwards on Bills,* 178, *and notes. Andrews* v. *Herriot.,* 4 *Cowen,* 510. *Note a and cases cited in subdivision* 1. *Hyde* v. *Goodnow,* 3 *Comst.* 269.)

VI. The taking of more than the legal interest being by

law a *criminal offense,* the doctrine of estoppel, insisted on in this cause, and applied by the referee as against the defendant, Post, should not, on principles of public policy, be permitted to operate. Estoppels are not favored in any case, their effect being to shut out the truth ; and, in cases of this nature, they are especially objectionable. They operate by in-direction to repeal, in effect, the statute of usury. They are against public policy, allowing the very object and aim of the law to be frustrated and evaded by a device so simple and convenient that it can be resorted to on all occasions. In cases of this description they operate with a demoralizing effect, which the law should and does abhor, offering a *bounty upon falsehood,* and suggested to parties already contemplating an offense against the law, that they may escape the consequences of their illegal acts, simply by *adding to the legal offense of usury the moral sin of lying about it.* (*See remarks of Marvin, J., in Truscott* v. *Davis,* 4 *Barb.* 500.)

VII. The referee erred in his finding on matters of law, and his report should be set aside and judgment rendered for the defendants. This court has the power not only of altering partially the judgment appealed from, but of substituting in its place the exact judgment which the court below, upon the facts found, should have rendered. (*Marquat* v. *Marquat,* 2 *Kern.* 336.) In this case there is no conflict of testimony, nor any doubt as to the facts; nor is there any suggestion that the facts can be altered upon a second trial. The questions in dispute are questions of law only, and must eventually be resorted to as decisive of the controversy. If on these the defendants are right, they should not be subjected to the further trouble and expense of a new trial. No good can result from this to either party. (*Id.*)

*By the Court,* PRATT, J. When a question arises in our courts upon a transaction which has occurred in another state, and there is nothing to show what the law of the state where

the transaction occurred is, and the transaction is of such a nature as to raise no presumption one way or the other, our courts would undoubtedly follow the law of this state. Take the case of a contract made and to. be performed in another state, in an action upon such contract, in the courts of this state, in the absence of proof in regard to the legal rate of interest in the place where the contract was made, our courts, I think, would be authorized to give interest according to the law of this state. (2 *Hill*, 201.) In such case there would be no presumption arising from the transaction itself, and in the absence of all other presumptions the courts might presume that the *lex loci* was not different from ours. But there is a general principle of law, that courts will not presume the commission of crime, or the existence of a state of facts which would operate as a forfeiture of property or rights; and this presumption is not confined to proceedings instituted with a view of punishing the supposed offense, but holds in all civil suits where it comes collaterally in question. (*Best on Presumptions*, 64, 65.) Assuming, therefore, this to be a contract of another state, it is claimed in this case, in the absence of all proof, that the courts should presume that the laws of that state are such that the note should not only be held void, and the lender forfeit the money actually loaned, but that he was also guilty of a misdemeanor. This, in my opinion, would be reversing a well settled principle of law. A party will not be presumed guilty of crime, in the absence of proof. Treating this, therefore, as a foreign contract, the burden of proof was upon the defendant, to show that the transaction was contrary to the laws of Connecticut.

It is claimed that the note being made payable in New York, the question must be determined by the laws of New York. If the thing to be done on the face of the contract was contrary to the laws of New York, the rule that the law of the place of performance must control, might perhaps apply. But in this case the loan was clearly made in Con-

necticut, and the excessive interest was taken there. If, therefore, no more interest was taken than the law of Connecticut allows, it surely cannot be illegal to agree to repay it in New York. (7 *Paige*, 662.)

Judgment affirmed.

[NEW YORK GENERAL TERM, May 2, 1859. *Roosevelt, Ingraham* and *Pratt*, Justices.]