HAWKINS *et al. v.* THE AMERICUS NATIONAL BUILDING AND LOAN ASSOCIATION.

1. The scheme of a building and loan association, pure and simple, is not unlawful as being a device for the evasion of the laws against usury, so long as, proceeding upon the principle of mutuality among its members, it adheres to the conduct of its business in accordance with the primary plan of its organization and engages in no business inconsistent therewith; and this is true even though the aggregate of fines and forfeitures imposed upon, and premiums and interest exacted of, a member who is himself a borrower of its funds, exceed the rate of interest fixed by law.

2. Even if section 3968(a) of the code is applicable to a suit brought by a building and loan association upon a bond secured by a deed to land, where the declaration in such case itself conveys to the defendant all the information which that section requires shall be given in the notice therein provided for, the purpose of the law is accomplished and further notice may be dispensed with.

3. The special pleas of the defendants, other than that of partial payment, being vague, indefinite, uncertain, and presenting no issues for determination by a jury, there was no error in striking the same; nor was there, under the evidence disclosed by the record, any error in directing a verdict for the plaintiff.

May 13, 1895. Brought forward from the last term.

Complaint. Before Judge FISH. Sumter superior court. November term, 1893.

J. E. D. SHIPP and FORT & WATSON, for plaintiffs in error. W. P. WALLIS, *contra.*

ATKINSON, Justice.

Defendants were original investors in the capital stock of the Americus Building & Loan Association, and, as subscribers to its stock, had issued to them a stock certificate for thirty shares of the capital stock of the association. Thereafter they became borrowers of the association and from it obtained a loan of three thousand dollars. To secure the payment of this sum, they pledged as collateral their stock in the association, and, in addition thereto, entered into a bond in the sum of six thousand dollars, secured by a deed to certain property, con-

ditioned for the repayment of the loan.  As borrowers,
they undertook by this bond to pay to the building and
loan association the sum of sixty cents per share per
month, dues upon their stock, the sum of fifty cents per
share per month as premiums upon their stock, to be paid
for the privilege of becoming borrowers of the fund ac-
cumulated from the mutual contributions of the several
members of this association; in addition thereto, they
undertook to pay the sum of six per cent. interest upon
the loan, and as well such sums by way of fines, amount-
ing to not more than three dollars per month, as might
be assessed against them in the event they made default
in the payment of any sums which they undertook to
pay by way of dues and premiums as members of the
association.  This building and loan association was
strictly a mutual institution.  It had no capital stock
save such as accrued from time to time from the mutual
contributions of its members by way of dues, amounting
to sixty cents per share per month.  According to its
by-laws, each borrower was required to carry one share
of stock for every one hundred dollars borrowed; such
stock was required to be assigned to the association as
collateral security for his loan, and when matured, would
of itself cancel the loan.  In addition to the regular dues
on shares, the borrower was required to pay at the same
time a fixed premium of fifty cents per share per month
for each share borrowed on, and six per cent. interest
per annum on the amount loaned, payable monthly.
When any borrower failed for three months to pay the
dues, interest and premiums due by him, the whole prin-
cipal loan became due, and the association was author-
ized forthwith to begin proceedings for the foreclosure
of any lien, or collection of any note given to the associ-
ation, on property pledged as security.  All interest paid
upon loans, premiums, fines and forfeitures went into
and became a part of the loan fund, and was not subject

to be used for the payment of expenses of any kind by the association. Ten cents on each share for expense account was deducted from the monthly installments payable by way of dues, and the balance of the fund resulting from the payment of dues likewise went into and became a part of the loan fund. It will be seen that according to this scheme of doing business, each one of the subscribers to the capital stock of this institution was a joint proprietor in the ultimate profits which might result from the mutual venture. If its business proceeded to a final result in accordance with the scheme devised for its conduct, the borrowing subscriber would pay nothing except his six per cent. interest upon the loan, with such an additional sum by way of premium as was charged against him for the privilege of using in the interim the money of the association. Whatever he contributed toward the common stock, would come back to him in the end. The only effect of paying the fifty cents premium was to mature at an earlier date his own, and the stock of his co-proprietors, than it would have matured without this. If each subscriber became a borrower, it would be impossible for him to lose anything by the operation, because the premium is not adjusted to the loan, but to the amount of stock which is assigned as collateral security for the loan. So far then as this particular institution is concerned, as appears from this record, it falls within the principle of the *Parker* case, decided in 46 *Ga.* 166, and the case of *Van Pelt* v. *The Home Building & Loan Association,* 79 *Ga.* 443, which declares that the scheme itself for the conducting of building and loan associations is not *per se* usurious, and if the transaction was designed to carry into effect the scheme and purposes for which the association was chartered, it was not unlawful. We do not mean to intimate that the principle of mutuality alone in the conduct of its business would protect all the dealings of a building

and loan association against impeachment for usury.
The principle itself may be made a cloak to conceal
usury.  We only mean to hold, that if there be not
beneath the scheme for the conduct of mutual building
and loan associations a covert wherein usury doth se-
cretly lurk, their transactions may be upheld.  The plea
of usury filed in this case failed to allege how or where-
in usury was exacted of the borrowers, how or wherein
for the use of the money borrowed the defendants un-
dertook, directly or indirectly, to pay a greater inter-
est than that allowed to be exacted by law, and this
latter is usury.  There was a general allegation of
usury in the transaction, but the plea did not state it
with such certainty and such circumstantiality as would
have enabled the court to refer that question for the
consideration of a jury; and therefore the court did not
err in striking the plea of usury.

The other special pleas filed in this case, in aid of the
plea of usury, to the effect that the association did not
keep its books properly ; made improper investments of
its funds; was engaged in business other than a build-
ing and loan association business, were all too general
in their nature to be considered by the court.  No plea
should be retained unless it present an issuable defense
in such manner as would enable the court and jury in-
telligently to pass upon the issue presented by it.  Tested
by these rules, the court did not err in striking, upon
oral demurrer, any of the several amendments to the
general issue filed in this case.  There was a plea of par-
tial payment, which was retained by the court, but upon
consideration of the admitted evidence in the case, the
court directed a verdict in favor of the plaintiff—the
payments claimed having already been allowed as cred-
its in the account made by the plaintiff to the de-
fendants.

Exception was further taken to the judgment of the

v 96–14

court in directing a verdict, upon the ground that there was no sufficient evidence of notice to the defendants by the plaintiff as required by section 3968(a) of the code, which section provides that: "No judgment of foreclosure shall be given in favor of any building and loan association, upon any mortgage executed to them, unless they shall have served upon the mortgager, at least thirty days before the court at which such judgment shall be taken, a complete statement of the amount for which they claim judgment, fully setting out the amount claimed for principal, interest, and fines or penalties; and also setting out the credit allowed for stock transferred to them as collateral, and any other credit to which the mortgager may be entitled." By its express terms, this section is confined to judgments of foreclosure upon a mortgage executed to a building and loan association, and therefore, literally interpreted, no error was committed by the court. We are not inclined, however, in passing upon this question, to confine the operation of this section to that class of cases to which it is made literally applicable; but we think the point was not well taken in this case, inasmuch as at the time of the institution of the suit filed by the plaintiff, a full and complete statement of the accounts between the plaintiff and these defendant borrowers was incorporated in the declaration. We think this is a substantial compliance with the requirements of the provision of the code now under consideration. In addition thereto, we think the evidence established, with reasonable precision at least, the actual fact of the service of the notice independent of the declaration.

Let the judgment of the court below be    *Affirmed.*