## ROONEY *v.* SOUTHERN BUILDING AND LOAN ASSOCIATION.

1. Except on dissolution, the fact that a receiver has been appointed for a corporation does not abate a suit then pending in its name.
2. Whatever might be the rights of the defendant under a plea in abatement, or on motion to make parties, he can not obtain a continuance on the ground that a receiver has been appointed for the plaintiff.
3. A company not such in fact can not, by calling itself a building and loan association, acquire the privilege of charging more than the rate of interest lawful in ordinary contracts between borrower and lender.
4. Where one takes stock and makes a contract with a company whose name prima facie imports that it is a building and loan association, the burden is on him to show that under the charter and laws of the State where created it is not such in reality.
5. The mere fact that there are different classes of stock, with different rights and liabilities of the stockholders, does not necessarily destroy the company's character as a building and loan association.
6. The defendant's plea was properly stricken, because it not only failed to aver that the different classes of stock were in existence at the time he made the contract and became a member, but it also failed to show that such differences and inequalities were of a nature to destroy the building and loan feature of the company.
7. Where a contract on its face is with a building and loan association, and to be governed by the laws of Alabama, but there is no proof of the statute of that State as to usury, or building and loan associations, there will be no presumption that the contract was usurious or otherwise illegal under the laws of that State.
8. The plaintiff made out its case, for more than the amount of the verdict, by the introduction of the defendant's written promise to pay. The evidence alleged to be secondary, even if such, was helpful to the defendant, and reduced the amount of plaintiff's verdict.

Argued March 15, — Decided March 31, 1904.

Complaint.    Before Judge Eve.    City court of Richmond county.
January 13, 1903.

The Southern Building and Loan Association of Huntsville,
Alabama, sued James Rooney, of Richmond county, Georgia, on a
sealed note dated at Huntsville, Ala., July 24, 1895, whereby he
promised to pay the company "at its office in Huntsville," $2,500
with interest at five per cent. per annum, payable monthly, and a
premium of five per cent. per annum, payable monthly, for a loan
under an application dated July 10, 1895, on 50 membership
shares.    He transferred the shares as collateral for the payment
of the loan.    This indebtedness was likewise secured by a deed
to real estate in the city of Augusta.    Attached to the petition
was a copy of the by-laws of the company, reciting, among other
things, that the object of the association is to afford the share-
holders safe and profitable investment ; that all contracts and se-
curities shall be construed by the laws of Alabama ; and a state-
ment of the terms and conditions of membership, the method of
borrowing on the shares, and the amount of monthly payments,
fines, etc.    The defendant by plea admitted the making of the
contract, payments thereon for some years, and the default, but set
up that the debt was infected with usury.    There was a verdict
in favor of the plaintiff, which was set aside by the judgment of
the Supreme Court, reported in 115 *Ga.* 400, because of error in
admitting interrogatories which had been improperly executed.
On the second trial the defendant amended his pleas, all of which
were allowed, except the third, wherein he set up "that plaintiff is
not a building and loan association as known to the laws of Geor-
gia," because (*a*) all payments made by the stockholders, borrow-
ers or non-borrowers, do not go into a common fund, but are
divided under a system whereby holders of shares of the same
face value receive a larger amount of the common profits than do
other stockholders ; (*b*) there is not an equality of burden and
rights, some stockholders having a less burden and a greater right
than others ; (*c*) there are two kinds of stock, "prepaid" and "in-
stallment," on which different sums are paid, with a difference in
the amount that may be borrowed, and difference in the distribu-
tion of the profits, these differences being set out in detail.
"Wherefore defendant says that plaintiff could make no genuine
building and loan contract as known to the laws of Georgia."

*Salem Dutcher*, for plaintiff in error. ⸱ *W. H. Barrett*, contra.

LAMAR, J.   On the call of the case the defendant moved to continue, on the ground that the plaintiff had been put into the hands of a receiver, who was authorized to intervene in the present suit, supporting the same by certified copies of the order of the circuit courts of the United States in Alabama and Georgia.   The defendant, by a plea in abatement, or motion to make parties, might have raised the question as to whether the case could be prosecuted in the name of the plaintiff, or in its name for the use of the receiver, or by the receiver alone.   But this could not be done by a motion to continue.   The appointment of the receiver did not abate the suit.   *Branch* v. *Augusta Glass Works*, 95 *Ga.* 579. There need be no danger of paying to the wrong party.   According to *Griffin* v. *Mutual Life Insurance Co.*, 119 *Ga.* 664, the defendant by appropriate proceeding may obtain a proper receipt from the one entitled to the money.   But here the evidence as to the appointment of a receiver was not offered on the trial, and there is therefore nothing properly in the record to indicate that the company is not in a position to receive and control its own funds, or to prosecute suits in its own name.

The former record in this case (115 *Ga.* 400) raised the question as to the validity of the "fully paid," "prepaid," and "installment" stock.   The verdict then was for the plaintiff, and, except in the admission of interrogatories improperly executed, this court held that "the principles of law involved in this case have been ruled in favor of the company, and no error appears to have been committed by the trial judge."   The same issue as to the "prepaid" and "installment" stock was again presented by an amended plea, more elaborate in detail but involving the same legal principle.   It is almost a case for the application of the doctrine of the "law of the case" or "res adjudicata."   But, as the two pleas are not identical, we will deal with the errors assigned. The note sued on is dated at Huntsville, Alabama, is made there payable, and according to its terms it is to be construed as an Alabama contract.   The plea nowhere alleges that the contract was usurious according to the laws of that State; the record contains no copy of its statute concerning interest and usury; though it may be proper to say that a contract identical in form with that sued on has been held to be valid, in Sou. B. & L. Assn. *v.* Ector,

98 Fed. 171.    Compare *Smith* v. *Sou. B. & L. Assn.*, 111 *Ga.*
811.    On general principles there would be no presumption that
the parties had made an illegal contract, but rather that the trans-
action was valid according to the foreign law by which it was to
be governed.·  *Craven* v. *Bates*, 96 *Ga.* 80 ; Pomeroy *v.* Ainsworth,
22 Barb. 120.    Nor would the result·be different on the presump-
tion that the common law prevails in Alabama; for by it the rate
of interest on money was not limited.    Smith *v.* Munsey Bank, 29
Ind. 158 ; White *v.* Friedlander, 35 Ark. 55 ; *Union Bk.* v. *Dot-*
*tenheim,* 107 *Ga.* 609.    There might be an extreme case in which
a' contract made and to be performed in a foreign State was on its
face clearly usurious according to the law of the forum, and where
the court, in aid of the State's public policy, might hold that, in
the absence of proof of what was the foreign statute, it would pre-
sume that the laws of the foreign State were similar to those of
the forum on the subject of usury.    Such a ruling is suggested in
Hubble *v.* Morristown Co., 95 Tenn. 585 (3); Leake *v.* Bergen, 27
N. J. Eq. 360 ; City Bank *v.* Bidwell, 29 Barb. 332.    But there is
no room for the application of any such principle here, because the
contract on its face was with a building and loan association, and
presumptively valid under the laws of Alabama as well as of
Georgia.    The defendant, however, seeks to attack this apparent
validity by pleading that the plaintiff was not a building and loan
association, inasmuch as it issued different classes of stock under
which there was inequality of liabilities and profits.    The plea
was properly stricken.    In the first place it failed to aver that
this inequality existed at the time of the making of the contract.
For, if the company was doing a building and loan business when
the contract was made, a new scheme, and the issuance of various
classes of stock thereafter, might give the defendant as a stock-
holder the right on an accounting to the profits to which he was
entitled according to the original plan.    But subsequent action by
the corporation would not have the effect of converting a non-
usurious into a usurious contract.

Mutual participation in profits and losses is undoubtedly the
basic principle on which contracts between this class of associa-
tions and its members have been saved from the consequences at-
taching to other usurious loans.    While there has been some
doubt expressed as to the right to issue paid-up or preferential

stock, still the authorities, in the main, tend to sustain the legal-ity thereof, provided the scheme is not shown to be oppressive to one class and unduly advantageous to another. Thompson on Building Associations, §§ 124–133. They recognize that the de-mand for money by the members may be so great as to make it necessary, by borrowing, or selling paid-up stock, to put the com-pany in funds to lend to those who prefer to pay in monthly in-stallments, and that such inequality in the amount contributed may entitle the paid-up stockholder to a preference on dissolution, and to fixed dividends while the company is a going concern. Besides, the defendant's plea does not aver that the issuance of dif-ferent classes of stock was in violation of the charter, or of the statutes of Alabama; nor does it show the money value of the difference, nor whether the amount of profits accruing to the "paid-up" stock was relatively greater than that on installment stock. Certainly there was nothing to indicate such a want of equality as to destroy the company's character as a building and loan association, and convert its transactions into a class like those between ordinary debtor and creditor. The rights of members do not have to be identical, unless the conditions are identical. *Bos-worth* v. *Sumter Real Estate Co.*, 100 *Ga.* 60. If the issuance of this paid-up stock was without authority, that would not prevent the corporation from still existing as a building and loan associa-tion, nor would it affect its contract obligations, unless the mem-ber showed that the scheme was such as to destroy the corpora-tion's character as a building and loan association. *Smith* v. *Sou. B. & L. Assn.*, 111 *Ga.* 811 (3). See also *Burns* v. *Equitable B. & L. Assn.*, 108 *Ga.* 183 (2), where there was common stock and coupon stock.

A mere name can not be used as a cloak under which the law against usury can be evaded. If the plaintiff is not a building and loan association in fact, it can not, by calling itself such, ac-quire the privilege of charging more than the lawful rate of inter-est. But its name prima facie imports that it is such. *Smith* v. *Southern B. & L. A.*, 111 *Ga.* 811. The burden was on the de-fendant to meet this presumption. The plea does not nega-tive the idea that it was chartered as such, nor does it aver that the defendant did not receive the benefits to which he was enti-tled as a member of such during the years he was not in default.

He and all the other members contracted to pay a high rate of interest, but they also contracted to receive their share of these very payments. If through misfortune or mismanagement the association went into the hands of a receiver, that did not relate back so as to invalidate what was a legal contract when made.

There was no motion for a new trial, but a direct bill of exceptions in which the evidence, objections to evidence, colloquies between counsel, arguments to the court, and his rulings thereon are set out. In addition to the points hereinbefore discussed, the exceptions relate mainly to the admission of testimony by the officers of the company, over the defendant's objection that this evidence was as to cash, items of payments, and facts knowledge of which must necessarily have been derived from the books, and that the witnesses could not testify from the ledger, but only from the books of original entry. On the face of the bond the plaintiff promised to pay $2,500 with five per cent. interest and five per cent. premium from July 24, 1895. The other primary evidence, in the shape of the deed, the note, the stock-scrip, and the by-laws, entitled the plaintiff to principal, interest, premiums, and, on default, to fines and attorney's fees. The defendant's original answer admitted the date of his default. On this primary evidence therefore the plaintiff was entitled to a verdict, and the burden was on the defendant to make his own proof as to the credits to which he was entitled. It is true that the plaintiff attempted unnecessarily to make this proof for the defendant by the cashier and other officers. If it was secondary, it was harmless, because it caused a reduction in the amount which the plaintiff would otherwise have been entitled to recover. If we concede that the testimony would have been incompetent to debit the defendant, here it was helpful and not harmful, in that it went to establish a credit.

<em>Judgment affirmed.    All the Justices concur.</em>