## McINTOSH *v.* THOMASVILLE REAL ESTATE AND IMPROVEMENT COMPANY, and *vice versa.*

1. In order for an incorporated company to come within the classification of like character to a building and loan association, so that it may conduct business on the plan of a building and loan association and escape the penalty of taking an excess of legal interest, its charter must indicate that its method of business with relation to mutual participation in profits and losses in loans made by it has some distinctive feature of the plan of a building and loan association.

2. A company, with a fixed capital stock, divided into shares of $100, payable in installments of two dollars per month, chartered for the purpose of buying and selling real and personal property, building houses and improving real estate, of borrowing money and giving security therefor, and lending money on real estate or upon such other security as the directors of the corporation may approve, with power to impose such reasonable penalties for failure to make prompt payment of subscriptions to stock or installments on property sold as it may fix by its by-laws, is not a building and loan association or an association of like character, so as to permit it to contract to lend money by aggregating the principal and interest for the entire period into one sum, divided into equal monthly payments, where the result is the taking or reserving of interest in excess of the maximum legal rate.

3. In so far as the plea set up a payment subsequent to the filing of the suit, and alleged that the plaintiff was not a building and loan association or an association of like character, and was not entitled to recover interest in excess of the legal rate, it was meritorious.

APRIL 12, 1912. REHEARING DENIED MAY 14, 1912.

Action upon contract. Before Judge Thomas. Thomas superior court. April 18, 1911.

*Roscoe Luke, L. L. Moore,* and *E. K. Wilcox,* for McIntosh.

*J. H. Merrill* and *W. H. Hammond,* contra.

EVANS, P. J. The Thomasville Real Estate and Improvement Company brought suit against T. M. McIntosh and Mrs. Clifford Williams to recover the balance of principal, interest, fines, and attorney's fees alleged to be due on a certain contract attached to the petition, the nature of which will be hereafter set forth. The defendant McIntosh pleaded, that the plaintiff was not a building

and loan association; and as such entitled by law to aggregate the principal and interest of the loan for the entire period and divide it into monthly installments, whereby greater interest than that allowed by law was charged; that he had paid the principal and legal interest; and that he was the sole owner of his codefendant's rights in the property and liable in her stead. The court directed a verdict for the plaintiff.

In *Cook* v. *Equitable Building & Loan Association,* 104 *Ga.* 814 (30 S. E. 911), it was held that a building and loan association, "as such organizations usually exist to-day, is a private corporation designed for the purpose of accumulating into its treasury, by means of the gradual payment by its members of their stock subscriptions in periodical installments, a fund to be invested from time to time in advances made to such shareholders on their stock as may apply for this privilege on approved security; the borrowing members paying interest and a premium for this preference in securing an advancement over other members, and continuing to pay the regular installments on their stock in addition; all of which funds, together with payments made by the non-borrowing members, including fines, forfeitures, and other like revenues, go into the common fund until it, with the profits thereon, aggregates the face value of all the shares in the association, the legal effect of which is to extinguish the liability incurred for the loans and advancements, and to distribute to each non-borrowing member the par value of his stock." As defined by the code: "The name 'building and loan association,' as used in this article, shall include all corporations, societies, or organizations or associations doing a savings and loan or investment business on the building society plan, viz., loaning its funds to its members, whether issuing certificates of stock which mature at a time fixed in advance or not, except those which restrict their business to the county of their domicile and not more than two other adjacent counties." It is the mutual participation in profits and losses by borrowers and non-borrowers which is the basic principle on which contracts between this class of associations and its members have been saved from the consequences attached to other usurious loans. *Rooney* v. *Southern Building & Loan Association,* 119 *Ga.* 941 (47 S. E. 345). The original conception of building and loan associations confined the loans to its members, but in the course of evolution

9

such associations have been allowed to make loans to non-members. At the same time, however, the departure from the original scheme of a community of interest among its members has never been so radical that a corporation which gathers its capital from its ·members by installment payments on stock subscriptions of fixed amounts may loan the money accumulated in its treasury indiscriminately to any person at greater than the maximum legal rate of interest and escape the consequences of usury. The scheme of a true building and loan association holds fast to the basic plan that members ,are to be given a preference in obtaining loans, and that the excess of interest is to be adjusted to the stock in the way of premiums and fines, and not to the loan; and there must be some nexus between at least some of the loans and the stockholder's interest in the association. *Hawkins* v. *Americus Building & Loan Association,* 96 *Ga.* 206 (22 S. E. 711). In an ordinary business corporation the stock is paid for in a lump sum or in aliquot parts, but the nature of the stock in a building and loan association is best illustrated in the case where the stockholder becomes a borrower to the extent of the stock subscribed for. "The stockholder receives the par value of his stock, as it would be when it matured on all payments completed thereon, in advance of that period, less the amount of any premium or bonus he may be willing to pay for the preference. But he continues to pay the amounts periodically falling due on such stock, just as if no loan had been made to him; and when his stock has matured, it is equal in value to the 'amount of his loan, and it is applied to the cancellation of such indebtedness." Thornton and Blackledge on Building and Loan Associations, § 146. Where a number of persons incorporate themselves into an association, with a fixed capital, represented by shares, payable in aliquot installments, and the money thus derived is used in purchasing real estate, or in making loans generally, such a company, with no added features, would not partake of the character of a building and loan association. Where the scheme of the corporation simply comprehends the loan of its money indifferently to members and the general public upon the same terms, the corporation amounts to a mere loan company, and it makes no difference whether the stock subscriptions are to be paid in advance of the organization of the company for business or in installments at stated intervals.

The Thomasville Real Estate and Improvement Company by its charter was authorized to buy and sell real and personal property and choses in action; to build houses and otherwise improve real estate; to loan money upon real estate or upon such other security as the board of directors may approve; to borrow money and execute security therefor; to sell land on the installment plan, for cash or otherwise, to its stockholders or others, upon such terms as may be agreed upon by the company and the other party or parties; to purchase real estate, and to subdivide it, and to sell the same as a whole or in such lots as the company may see fit; to hold real estate and other property in fee or as security for loans; to declare dividends; to collect subscriptions to its capital stock by ordinary process of law, or by forfeiture of stock for failure to pay installments, and the sale of the stock so forfeited at public outcry after notice; to impose such reasonable penalties for failure to make prompt payment of subscriptions to stock, or installments on property sold, as it may fix in its by-laws; to make any and all contracts necessary to carry into effect the purposes and objects of the corporation; and to enact necessary by-laws for the prosecution of its business. Its capital stock was declared to be $35,000, divided into shares of $100 each, payable in monthly installments of $2 per share until $100 shall have been paid on each share. The company was allowed to increase its capital stock to $100,000. It was declared that the stock of the company was to be transferable only on the books of the company, and no share to be transferred until all arrears thereon had been fully paid; and that at the meetings of the stockholders each share of stock entitled the holder to one vote, to be cast by himself or by written proxy. Provision was made for an annual meeting of the stockholders, and for the election of a board of directors authorized to name their officers from their own number. The charter was granted September 21, 1888. On May 22, 1891, the stockholders adopted, as an amendment to their charter, the provisions of the act of the General Assembly, approved December 26, 1888, and now incorporated in the Civil Code, § 2878, by which "All building and loan associations, and other like associations doing business in this State, are authorized to lend money to persons not members thereof nor shareholders therein at eight per cent. or less, and to aggregate the principal and interest at the date of the loan for the

entire period of the loan, and to divide the sum of the principal and the interest for the entire period of the loan into monthly or other installments, and to take security by mortgage or waiver of exemption, or title, or both, upon and to real estate situated in the county in which said building and loan association may be located."

The defendant, McIntosh, subscribed to 20 shares of stock of the par value of $100, and was the owner of this stock at the time he applied for and received from the company a loan of $6,000, and entered into a contract with the company whereby he agreed to pay them the sum of $9,600, according to the constitution of the company, as rent for the land and premises thereinafter described. He agreed to pay 120 monthly installments of $80 per month, on the 8th day of each and every month until the whole was paid. Each monthly installment unpaid was to bear interest at the rate of eight per cent., and any default of payment was to be subject to such fine or penalty as the constitution and by-laws prescribed. He agreed to pay all taxes, repairs, and premiums of insurance, and all monthly or other dues in the shape of installments, interest, premiums, fines, and arrearages that might be due to the company, or that might be paid out by the company for him, and perform every duty imposed upon him by the company, and to pay every charge therein required, and all costs and expenses, including attorney's fees, incurred in the enforcement of any claim or duty against him. He further agreed that default for three consecutive months in the payment of monthly installments would mature the entire balance; and that after the sale of the property held by the company, the proceeds should be applied first to the payment of expenses and the balance to the debt, and agreed to pay any deficiency remaining unpaid, and, in case of default, to surrender possession to the company, and, upon his failure so to do, the company had the right to proceed against him as tenant in arrears or holding over, or in any other legal way to sell or dispose of the premises as provided by its constitution; that no alteration or amendment to the constitution should affect the validity of his obligation; and that he would pay any sum or sums of money to discharge any obligation that might be demanded or required by the amended constitution, and his obligation should be held and construed to be binding under the same and in conformity therewith. In order to secure the payment of his obli-

gation he conveyed to the Thomasville Real Estate and Improvement Company, pursuant to §§ 1969-1970 of the Code of 1882 certain described real estate, acknowledging that he received from the company its bond for title, conditioned for the company's re conveyance of the premises to him upon performance of his obligations and covenants therein.

It appeared that the borrower was a stockholder at the time the loan was made to him, and acted as a director of the company from September 13, 1898, to May 3, 1909, when he sold his stock. He paid for his stock by monthly installments, just as other stock was paid for. No loans were made by the company except loans payable in installments. Very few of the stockholders borrowed money; and when they did borrow, it was upon real estate security. The company made no loans except upon real estate security. Prior to the adoption by the company of the act of 1888 (Civil Code, § 2878) no loans were made to any persons not stockholders.

These are the essential features of the character of the plaintiff company and of the contract which it is seeking to enforce as a building and loan association obligation. The defendant, by motion to dismiss and by plea, raised the point that the plaintiff was not a building and loan association, and was not entitled to aggregate the principal and interest of the loan into one sum and divide it into monthly installments, if, by so doing, the amount contracted to be paid is in excess of the maximum legal rate of interest. Stress is laid on the fact that the charter and the constitution provide for the collection of fines in case of certain defaults in payments. The provision of the charter is that the company may impose reasonable penalties for a failure to make prompt payment of subscriptions to stock or of installments on property, such as it may fix by its by-laws, but it is not provided that the company may impose fines on its borrowers for default in the payment of loans. The imposition of a penalty for breach of contract in paying stock subscriptions and installment payments on purchases of property seems to be more in the nature of liquidated damages. It has not the remotest reference to premiums to be paid by stockholders for an advance of money, or fines incurred because of the non-payment of a loan installment. The charter permits the company to deal indiscriminately with stockholders and the public in the matter of loans, as well as in sales of

property contracted to be paid for in installments. In fine, the character of the company is that of a loan and investment company. It was not a corporation contemplated by the act of 1888 (Civil Code, § 2878) as coming within its provisions. Not being incorporated as a building and loan association, it could not voluntarily convert itself into such a corporation, and the adoption of the act of 1888 by its stockholders was without avail.

It has been held that a company whose name imports that it is a building and loan association will be presumed to be such until the contrary is made to appear. *Rooney* v. *Southern Building & Loan Association,* supra. The name of the Thomasville Real Estate and Improvement Company does not import a building and loan association; and the burden was upon the plaintiff to make it appear that it was either a building and loan association or an association of like character. The charter of the company contains no essential feature of a building and loan association. It has no provision looking to the division of the aggregate principal and interest into monthly installments, no provision in the way of premiums for the privilege of an advance on a member's stock, nor any reference that it proposes to do a building and loan association business. We have compared the charter of this company and the contract which it is seeking to enforce with that of other associations which have been held to escape the infection of usury because of their building and loan feature, and we find no such essential points of agreement upon the cardinal principle as will bring this company and its contract within their provisions, so as to allow it to charge more than the legal rate of interest.

Having reached the conclusion that the plaintiff corporation is not a building and loan association, nor of like character to such, and that the contract which it is seeking to enforce stipulates for interest in excess of the maximum legal rate, it becomes unnecessary to deal with the other assignments of error in the main bill of exceptions.

Error is assigned in the cross-bill of exceptions on the refusal of the court to strike, on oral motion, the defendant's answer as insufficient to raise the issue of usury, or to state any defense. It averred that the plaintiff was not a building and loan association entitled to make the contract sued on, which reserved more than the maximum legal rate of interest. It also averred payment,

since the filing of the suit, as sufficient to discharge the principal and lawful interest. There was no error in refusing to strike the plea.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*