## ATLANTA LOAN AND SAVING COMPANY *v.* NORTON.

1. Under the provisions of the charter, constitution, and by-laws of Atlanta Loan and Saving Company, set forth in connection with the questions propounded by the Court of Appeals, that company is "a like association" within the meaning of the act of 1913, which was an act to amend section 2878 of the Code of 1910.
2. The act of 1913 referred to above is a general law, and does not fail of effect because the company's charter antedated it and was never amended for the purpose of adopting the privileges it offers.

No. 1491.   FEBRUARY 13, 1920.

The Court of Appeals certified the following questions (Case No. 10206) :

"1.  Viewed in connection with the several excerpts from the charter, constitution, and by-laws of the Atlanta Loan and Saving Company, hereinafter quoted, is that company a 'building and loan association' or 'a like association,' within the meaning of the act of 1913, 'to amend section 2878 of the Code of 1910,' etc. (Ga. L. 1913, p. 54) ?

"2.  If the terms of the act of 1913, supra, are broad enough to embrace the Atlanta Loan and Saving Company as 'a like association,' does the act fail of this effect because the company's charter antedated it and was never amended for the purpose of adopting the privileges it offers?

"The portions of the charter, constitution, and by-laws above referred to, are as follows:

" (Extract from charter, 2nd paragraph.)   'The object and purpose of said corporation is to promote and encourage frugality and savings, and to establish an institution where aid may be afforded to its stockholders and others by extending them needed financial assistance upon a sound, conservative, and businesslike basis, and for pecuniary gain and profit to said stockholders, and to do any and all things herein set forth as a corporate entity or person.'

" (Extract from charter, 5th paragraph.)   'Petitioners pray for the right under their corporate name to lend to the stockholders of said corporation, or to others, the money accumulated by it from time to time, and to make such loans upon such security, real or personal, and upon such terms, conditions, and under such contracts, rules, and regulations as its constitution and by-laws, not inconsistent with any law, may set out; to issue and sell its stock as hereinafter defined, and to receive the money derived from the

sale thereof; to secure the repayment of loans and the performance of all conditions upon which loans are made and the payment of the purchase-money for any property or stock sold, or the repayment of any advances made of any kind, by taking security of any kind or description by way of pledge of personal property or mortgage or deed of trust or other conveyance of real estate, or by the transfer of its stock, or by such other manner as the law may permit; to fix by its constitution and by-laws interest or charges or other conditions under which it will dispose of the money in its treasury to its stockholders, and to authorize the manner in which it will award or lend its assets to any member of or stockholder according to the value of his shares, upon such reasonable charges and condition as may be fixed by said constitution and by-laws, and to further arrange by said constitution and by-laws the mode of making or repaying said disposition of its money. And petitioners further pray for the right to charge and receive interest on its loans in advance or otherwise at the legal rate, and further for the right to arrange by its said constitution and by-laws, in a manner not inconsistent with law, for the levy, assessment, and collection from its stockholders of dues or payments upon its stock in accordance with the conditions of their subscriptions and the terms of their contracts, and to retire their said stock, and to allow such interest and dividends thereon as their said constitution and by-laws shall direct. They further pray for the right to levy, assess, and collect fines for the non-payment of dues by its stockholders, or for failure to comply with or perform any other obligation or duty owed the company by them under the terms of their contracts, and for authority to make reasonable regulations for the payment, by installments or otherwise, of the purchase-money due for its stock, or the collection of its loans, the withdrawal of its stockholders, and all matters connected therewith as may not be inconsistent with law. They further pray for the right to buy, . . to purchase, hold, sell, and reissue class 'A' stock of the company, to purchase, hold, cancel, and reissue its Class 'B' and Class 'C' stock as may not be inconsistent with law.'

" (Extract from charter, 8th paragraph.) 'Petitioners pray for the right to issue and sell from time to time a third-class stock, to be known as Class 'C' stock, in an amount not to exceed at any one time one million dollars, said Class 'C' stock to be a small

installment stock of the par value of fifty ($50.00) dollars per share, and to be-issued and sold subject to such regulations for its sale, purchase and issuance, conversion and cancellation, together with the interest and profit it bears, as the constitution and by-laws may fix and declare. Said Class 'C' stock to have no voting rights or privileges; and when this class of stock has been paid for to its par value, the company may convert the same into Class 'B' stock or redeem or retire the same, under such reasonable rules and regulations as may be provided for in the by-laws. This stock having for its chief end and purpose the encouragement of small savings.'

"(Extract from constitution, article 4.) 'Any person, upon subscribing for or in any way becoming the owner of one or more shares of the capital stock of this corporation, of whichever class, shall become and be deemed a stockholder thereof, and as such shall be entitled to the privileges and subject to the liabilities as prescribed by this constitution and by-laws and by the charter, except only owners of Class 'A' stock shall be entitled to vote.'

"(Extract from by-laws, section 8.) 'Class 'C' stock is an installment stock. This stock will require payment of $1.00 per share for fifty weeks. Any holder of Class 'C' stock, unless same is hypothecated with the corporation as security for a loan, shall be entitled to draw interest on said stock at the rate of 4% per annum, after twenty-five successive weekly payments have been made upon said stock. Upon the payments of said stock at the end of fifty weeks, or thereafter, holders of Class 'C' stock shall have the right to convert their stock into Class 'B' stock as above provided. Provided, however, the corporation consents thereto, the power being reserved to the corporation either to redeem and retire Class 'C' stock when it reaches par value, or convert the same into Class 'B' stock. Not over one million dollars of Class 'C' stock shall be issued and outstanding at any time.'

"(Extract from by-laws, section 10.) 'Funds of the corporation shall be loaned to its stockholders or to other persons or corporations. Any person desiring a loan from the company shall furnish such security as may be deemed by the Board of Directors or Finance Committee safe and sufficient for the protection of the money loaned. Such security shall consist in part of Class 'C' stock of the company, unless the Board of Directors or Finance

Committee determine otherwise, one share for every $50.00 or fractional part thereof borrowed. Said Class 'C' stock, when required, shall be by such borrowers hypothecated with the company as additional collateral security for the loan. Loans shall be made upon the consent of the Board of Directors or the Finance Committee for a term of fifty-two weeks, and a premium or interest charge of 8% per annum, or other rate per cent. as determined by the Board of Directors, not to exceed, however, 8%, shall be deducted from the amount of the loan when made. The Board of Directors may, however, make loans for a longer period or shorter period, should they deem it advisable. Interest charged shall be deducted from the amount of the loan when made, at the rate of 8% per annum for the time the loan is made, or such other rate less than 8% as agreed by the Board of Directors or the Finance Committee. At the maturity of the loan the borrower may discharge the same either in cash or by the surrender of his Class 'C' stock pledged as security therefor. Provided all dues and fines have been paid thereon to the end of such maturity; and provided further that if the borrower wishes to avail himself of the privilege of surrendering his Class 'C' stock in discharge of the loan, he must indicate his wish by communication in writing filed with the cashier of the corporation two weeks before the maturity of the loan, and not later.'

"(Extract from by-laws, section 11.) 'Should any borrower on Class 'C' stock fail to pay his required weekly dues, or payments, a fine of five cents on each share of stock shall be charged for such failure each week he is in default. The amount of fine so assessed shall be deducted from the amount standing to the credit of such member on his stock, or from his subsequent payments, unless otherwise collected.' "

*Weltner & Cheatham* and *Hollins N. Randolph,* for plaintiff in error. *M. Herzberg* and *D. K. Johnston,* contra.

BECK, P. J. 1. Section 2878 of the Code of 1910 reads as follows: "All building and loan associations, and other like associations doing business in this State, are authorized to lend money to persons not members thereof, nor shareholders therein, at eight per cent. or less, and to aggregate the principal and interest at the date of the loan for the entire period of the loan, and to divide the sum of the principal and the interest for the entire period of

the loan into monthly or other installments, and to take security by mortgage with waiver of exemption, or title, or both, upon and to real estate situated in the county in which said building and loan association may be located." If we were called upon, in answer to the question propounded by the Court of Appeals, to decide whether or not Atlanta Loan and Saving Company was, under the provision of section 2878 as it stands in the Code of 1910, a "building and loan association" or "a like association," we should reply that under the decisions in the cases of *Cook* v. *Equitable B. & L. Asso.*, 104 *Ga.* 814 (30 S. E. 911), and *McIntosh* v. *Thomasville Real Estate &c. Co.*, 138 *Ga.* 128 (74 S. E. 1088, Ann. Cas. 1914C, 1302), it is not a building and loan association or a like association. In the *Cook* case it was held: "A building and loan association, as such organizations usually exist to-day, is a private corporation designed for the purpose of accumulating into its treasury, by means of the gradual payment by its members of their stock subscriptions in periodical installments, a fund to be invested from time to time in advances made to such share-holders on their stock as may apply for this privilege on approved security; the borrowing members paying interest and a premium for this preference in securing an advancement over other members, and continuing to pay the regular installments on their stock in addition; all of which funds, together with payments made by the non-borrowing members, including fines, forfeitures, and other like revenues, go into the common fund until it, with' the profits thereon, aggregates the face value of all the shares in the association, the legal affect of which is to extinguish the liability incurred for the loans and advancements, and to distribute to each non-borrowing member the par value of his stock." In the *McIntosh* case it was held: "In order for an incorporated company to come within the classification of like character to a building and loan association, so that it may conduct business on the plan of a building and loan association and escape the penalty of taking an excess of legal interest, its charter must indicate that its method of business with relation to mutual participation in profits and losses in loans made by it has some distinctive feature of the plan of a building and loan association." And in the course of the opinion delivered in that case it was said: "It is the mutual participation in profits and losses by borrowers and non-borrowers which is the

basic principle on which contracts between this class of associations and its members have been saved from the consequences attached to other usurious loans. *Rooney* v. *Southern Building & Loan Association,* 119 *Ga.* 941 (47 S. E. 345). The original conception of building and loan associations confined the loans to its members, but in the course of evolution such associations have been allowed to make loans to non-members. At the same time, however, the departure from the original scheme of a community of interest among its members has never been so radical that a corporation which gathers its capital from its members by installment payments on stock subscriptions of fixed amounts may loan the money accumulated in its treasury indiscriminately to any person at greater than the maximum legal rate of interest and escape the consequences of usury. The scheme of a true building and loan association holds fast to the basic plan that members are to be given a preference in obtaining loans, and that the excess of interest is to be adjusted to the stock in the way of premiums and fines, and not to the loan; and there must be some nexus between at least some of the loans and the stockholder's interest in the association." We do not find in the excerpts quoted in the questions propounded by the Court of Appeals the essential features, as pointed out in the two decisions from which the above quotations are taken, of a building and loan association, or a like association, but that feature of a building and loan association, called by the writer of the opinion in the *McIntosh* case the "basic principle" of such an association, is wanting from the charter and by-laws of the Atlanta Loan and Saving Company, unless it appears in other portions of the charter and by-laws not quoted in connection with the questions propounded. For we find nothing in the charter and by-laws, as exhibited here, making provision for the mutual participation in profits and losses by borrowers and non-borrowers, which constitutes the basic principle on which contracts between this class of associations and its members have been saved from the consequences attached to other usurious loans. After these decisions were rendered, the legislature passed an act approved August 16, 1913 (Acts 1913, p. 54), entitled, "An act to amend section 2878 of the Code of 1910, to define the term 'other like associations' therein referred to," etc. It had previously passed the amending act of 1910, relating to the

location of such associations. See Acts 1910, p. 35. As thus amended section 2878 reads as follows: "All building and loan associations, and other like associations doing business in this State, [and the term other like associations shall include a corporation organized to do a general savings and loan business, and among other things lending its funds to members of the industrial and working classes, or others, and secured in whole or in part by personal endorsements and its own fully paid or installment stock, or its own fully paid or installment certificates of indebtedness, or other personal property] are authorized to lend money to persons not members thereof, nor shareholders therein, at eight per cent. or less, and to aggregate the principal and interest at the date of the loan for the entire period of the loan, and to divide the sum of the principal and the interest for the entire period of the loan into monthly or other installments, and to take security by mortgage with waiver of exemption, or title, or both, upon and to real estate situated in the county in which said building and loan association may be located; [and such building and loan association shall be construed to be located in any county wherein it has an office, agent, or resident correspondent:] [Provided, however, and nevertheless, the associations referred to and as defined herein shall not be compelled to lend their funds exclusively in the manner hereinbefore specified, but in addition thereto also have authority to make loans to members of the industrial and working classes and to all other persons, due at fixed intervals not exceeding twelve months, and secured in whole or in part by personal endorsements and by its own fully paid stock, or stock payable on the installment plan, certificates of indebtedness, fully paid or payable on the installment plan, or both endorsements and such securities, or other personal security and choses in action, and on such loans so made and secured as aforesaid it shall be lawful to deduct interest in advance, but not to exceed eight per cent. discount, and the installment payments, if any, made on such hypothecated stock or certificates of indebtedness during the time the loan is of force may or may not bear interest, at the option of the association; and the taking of said installment payments on said hypothecated stock, certificates of indebtedness, choses in action, or other evidences of indebtedness shall not be deemed usurious]." The parts in brackets are the additions and

interpolations made by the acts of 1910 and 1913. The plain language of the amendment of 1913 makes a radical departure from what was formerly an essential feature of a building and loan association and from what has been termed the "basic principle" of such an association. That is apparent without discussion and without an analytical construction of the language employed in the act of 1913. For under the plain, unambiguous declaration of this amending statute, a corporation organized for the purposes set forth in the charter and constitution of the Atlanta Loan and Saving Company falls within the terms there used to define a like association. Whether this departure from the underlying principles of building and loan associations, by which companies may charge a rate of interest which was formerly usurious and which would have been usurious until the amendment contained in the act of 1913 was made, was a wise departure, is a legislative question; and we are not called upon to discuss the wisdom of such legislation. But we may point out the fact that it will enable many corporations to charge usurious rates of interest which could not have been charged under the law defining building and loan associations and prescribing and limiting their powers, as it existed before the act of 1913.

2. This is a general law to the advantage of and conferring additional privileges and rights upon corporations like the plaintiff in error, and, moreover, makes provision for doing business as the Atlanta Loan and Saving Company prayed it might be permitted to do. And we are of the opinion that this amendment became a part of the charter, in view of these facts, without formal adoption; and we deem it unnecessary to enter upon an extended discussion as to when amendments become a part of the charters of existing corporations without formal adoption. See 2 Fletcher's Cyclopedia of Corporations, § 784, and cases there cited.

*All the Justices concur.*