27910, 27923. EWING *et al. v.* MECHANICS LOAN AND SAVINGS COMPANY; and *vice versa.*

*J. C. Murphy, Bond Almand,* for plaintiffs in error.

*Burress & Dillard,* contra.

SUTTON, J. Mechanics Loan and Savings Company brought suit in the municipal court of Atlanta, now the civil court of Fulton County, against Herman Alonzo Ewing, Elmo Bell, John K. Castleberry, William Walter Fain, Plennie C. McConnell, and Herbert H. Ewing. Proper service was effected on all but Herman Alonzo Ewing and John K. Castleberry. The petition alleged, that the defendants were indebted to the plaintiff in the sum of $928, besides interest and twenty per cent. attorney's fees, upon a guaranty, a copy of which was attached to the petition as exhibit A and made a part thereof; that the guaranty sued on was given by the defendants to guarantee the payment of a certain note in the sum of $1392, dated October 26, 1937, and signed by H. A. Ewing, the note being shown by copy on the reverse side of exhibit A and marked exhibit B and made a part of the petition; that more than ten days before the filing of the suit the defendants were given notice, as per copy attached and marked exhibit C, that suit would be filed and attorney's fees claimed. Exhibit B purports to be a copy of a note signed by H. A. Ewing in favor of Mechanics Loan & Savings Company in the sum of $1392, dated October 26, 1937, "with interest from date of issue of certificate at eight per cent. (8%) per annum, and all costs, including twenty per cent. (20%) attorney's fees, if collected by law, or through an attorney, said attorney's fees not to be less than a minimum of $10." The paper is headed "Purchase-money note for four per cent. (4%) installment certificate," and among other things the note provides:

"This note is payable . . in 24 installments of $58 each on the 22 day of each and every month following the date hereof, until the whole amount of this note, together with interest accruing thereon, shall have been fully paid, being for the purchase of a four per cent. (4%) installment certificate of Mechanics Loan & Savings Company. Failure to pay any installment of this note, as herein provided, time being made expressly of the essence, shall render at the option of the holder thereof, with or without notice, all remaining installments at once due and collectible. There has been deposited and pledged as collateral security for the payment

of this note, or any other liability or liabilities of the undersigned to the owner thereof, whether the same be now existing or hereafter contracted, now due, or hereafter to become due, the following property, to wit: B/S. Said company is authorized to take additional security, as collateral security for the payment of this note; and to substitute other collateral in lieu thereof, and/or to release any collateral to the maker hereof. Said company shall not be required to first proceed against any of its collateral, or other security, before filing suit and obtaining judgment thereon. It may, at its option, refuse to take legal or other proceedings to foreclose on its collateral or other security, and may file suit, without doing so, against the parties hereto, and may at its election require the discharge of any obligation herein by any of the undersigned. If at any time the collateral above or hereafter pledged as security for this note shall be or become unsatisfactory to the holder hereof, the undersigned will immediately furnish such further security or make such payments on account as will be satisfactory to the holder; and in the case of a failure so to do, or if the undersigned shall fail to meet at maturity any liability to holder hereof, then and in either of these events the holder of this note shall have the option to treat the same as due and payable, and without demand for payment or notice to the undersigned may exercise all rights given hereunder or by law upon a default. . . Failure of the holder hereof to exercise any rights it may have, or may acquire with respect to this note, shall never be claimed by the undersigned, nor held by any court, to constitute a waiver by the holder hereof to such rights. . . The nominal interest of $78 shall be payable at the rate of $3.25 each per month, with each installment of principal, making the total amount thereof $61.25 each per month, on each due date until any default, in which event all accrued interest to such date, less any credits, shall be paid, and interest at 8% per annum on balance of principal thenceforth until fully paid." On the back of the note, as shown by exhibit A, appears the following, followed by the signature of the defendants: "For and in consideration of the Mechanics Loan & Savings Company accepting the within note, the undersigned hereby jointly, severally, and in solido guarantee the Mechanics Loan & Savings Company, its successors, indorsers, or assigns, the punctual payment of all the intallments of the within note and the fulfillment

of each and every term and condition contained therein. If this guarantee is collected by law or through an attorney at law, then the undersigned hereby agrees to pay 20 per cent. attorney's fees, with a minimum attorney fee of $10. The undersigned hereby consent that the time of payment of said note may be extended any number of times, and/or smaller payments than provided therein accepted, without further notice to or further assent of the undersigned, or any of them, and that each and every one of them shall remain bound by this agreement, notwithstanding. Each of us, whether principal, surety, guarantor, endorser, or otherwise party hereto, hereby severally waives and renounces, each for himself and family [any and all homestead or exemption rights], and each further waives demand, protest, and notice of demand, protest, and nonpayment."

The defendants filed general demurrers, which were overruled, and in their bill of exceptions error was assigned on exceptions pendente lite duly certified and filed, but in their brief counsel for defendants, plaintiffs in error in this court, do not argue or insist upon but expressly abandon this assignment of error. The defendants filed an answer denying liability and set up that they had been induced to sign the guarantee upon the representation that certain collateral had been taken by the plaintiff which fully and adequately protected the obligation, but that the plaintiff never took possession, custody, or control of such collateral (an automobile, household and kitchen furniture, and a certain life-insurance policy on the life of the principal), but allowed the same to be consumed by the maker of the note; that the 4 per cent. installment certificate, for which the note was purportedly given, had never been delivered unconditionally to the principal debtor, and that there had been no bona fide sale of such certificate, and that the transaction was merely a device and scheme to avoid the laws against usury and to work a fraud upon the defendants; that they had not received any consideration for their guarantee and that the note itself was infected with usury. Subsequently the defendants, over the demurrers and objections of the plaintiff, filed an amendment, reciting that the transaction between H. A. Ewing and the plaintiff was one in which he borrowed the sum of $1200 to pay debts owing by him to third parties, that the purchase of the certificate was not a bona fide transaction, that the relation-

ship between the defendants and the plaintiff was that of surety-ship, and that the failure of the plaintiff to proceed against the collateral covered in the bill of sale (referred to in the note as "B/S") had increased their risk and destroyed their liability; that the plaintiff had actually loaned the said debtor only $1200, the sum of $192 in the note representing a charge of interest in advance of 8 per cent. on $1200 for two years, and that such advance taking of interest constituted usury.

· Thereafter, the defendants filed a further amendment in which they set up that the transaction was really one in which the said H. A. Ewing borrowed $1200 and executed a note in the sum of $1392 with interest at 8 per cent. payable two years after date, and executed to the plaintiff a bill of sale to certain property as security, and that he executed a note in a like sum for the pretended purchase of a 4 per cent. installment certificate, which was indorsed by the defendants as sureties, the latter being the note sued on, and that the note given for the certificate was not a bona fide transaction and was without consideration between the plaintiff and the defendants; that the said H. A. Ewing had conveyed to the plaintiff by bill of sale title to an automobile and certain household goods, providing ample solvent collateral security for the payment of the indebtedness, but that after said note was in default plaintiff made no effort to realize anything on said security and the value of the same had been lessened and dissipated and was then insufficient to pay but only a small part of the indebtedness, and that by reason of plaintiff's conduct the defendants' risk as sureties had been increased and they had been discharged as a matter of law; that the plaintiff operated as a building and loan association, and under the provisions of the Code, § 16-101 et seq., the plaintiff could not make a loan due at fixed intervals exceeding twelve months, and that in the transaction in question the plaintiff had loaned the debtor the sum of $1200, with interest charged at 8 per cent. two years in advance, due in twenty-four installments, and that for that reason the said note was illegal and void.

· The case came on for trial, and after the introduction of evidence by both sides the court directed a verdict in favor of the plaintiff for the principal sum of $802.10, interest $52.27, and attorney's fees $160.87. ·The defendants filed a motion for new trial on

the general grounds, and by amendment added two special grounds which in substance assigned error on the direction of the verdict, on the ground that under the pleadings and evidence there were issues of fact which should have been submitted to a jury, and that, having overruled the plaintiff's general demurrer to the defendants' answer, such ruling became the law of the case, and evidence having been submitted supporting the defense raised in the defendants' answer, the issue should have been passed on by a jury, a verdict was not demanded as a matter of law in favor of the plaintiff, and the court erred in directing the verdict in favor of the plaintiff. The court overruled the motion for new trial, and the exception is to that judgment. The plaintiff filed exceptions pendente lite, assigning error on judgments of the court overruling its demurrer to the defendants' answer and allowing an amendment thereto; and by cross-bill of exceptions error is assigned on the grounds specified in said exceptions pendente lite.

The evidence on the trial of the case was substantially as follows: N. A. Moore testified, that he was manager of Mechanics Loan & Savings Company and handled with H. A. Ewing the transaction in question; that Ewing came to him on the date of the note, October 26, 1937, and made application for a loan, but that the transaction had to be passed on by a committee of the company and was not completed until November 2, 1937; that his company transacts business as a like association to a building and loan association; that they issue and sell installment certificates under a license from the Secretary of State; that he sold Ewing the certificate at the time the loan was made; that on November 2, 1937, the date of the certificate, he paid Ewing $1200 on a note dated October 26, 1937, due in two years from date, but not until after the certificate had been issued to him and for which he gave the note sued on in the present case; that the money was used to pay certain obligations of Ewing and checks were made in the names of his creditors, payable to Ewing and them, respectively, and these checks were turned over to Ewing for distribution after his indorsement; that there were two entirely different transactions, the purchase of a certificate by Ewing being essential to the loan of money, which was not due at the time of the trial, the suit being on the guaranty on the note which was given in payment of the certificate; that by agreement the certificate, when issued, was

assigned and transferred to the company by Ewing as security for the note for the certificate and for the note representing the loan of $1200, which note was in the amount of $1392, after adding interest at 8 per cent. for two years; that Ewing also signed a bill of sale to certain household goods and an automobile as security for the notes; that after Ewing's debts were paid there remained from the $1200 the sum of $38.24 and this amount was given to him; that the certificate for $1392 is in the same amount as the loan note because he would have to save that much to pay the loan note; that the note for the certificate was supposed to be paid at the rate of $58 per month, but that Ewing said he would prefer to pay $29 semi-monthly and this was agreed to between them, and they agreed to limit the interest to $78; that payments by Ewing were credited against the purchase of the installment certificate and nothing credited on the loan note; that under the transactions the certificate, when the full amount had been paid for, would belong to Ewing absolutely and would draw 4 per cent. interest thereon, if he would also pay the loan note in the sum of $1392, but that otherwise, when the certificate was paid for, they would cancel all the instruments; that in the transaction Ewing was not becoming a stockholder, but that the certificate was issued as class C security which the company was authorized to issue, and that in 1937 the company had a right to issue $40,000 more of this kind of certificate than was issued; that the bill of sale was taken as security for the purchase of the certificate and the loan; that afterwards Mrs. Ewing came to the office and claimed that under an alimony settlement the automobile and household goods belonged to her; that, according to the ledger record, the account was in default on August 8, 1938; that they made the usual effort to collect the account from Ewing, calling and writing him, and on August 25, 1938, sent out notices to the defendants; that the company's counsel brought a trover action for the automobile included in the bill of sale given as security by Ewing, the furniture being of little value; that Ewing left town about October 22, 1938, and that after default in payment of the note for the installment certificate unsuccessful efforts were made to induce Mrs. Ewing to release the automobile in order to reduce the liability of the defendants. (It was stated to the court by plaintiff's counsel that the trover suit was pending at the time of the trial of the present case.)

The defendants H. H. Ewing, W. W. Fain, P. E. McConnell, and Elmo Bell testified, in substance, that they signed the notes at the request of H. A. Ewing, that he brought the papers to them for that purpose, and that they were not signed at the office of the plaintiff.

The following documentary evidence was introduced: The original note, dated October 26, 1937, signed by H. A. Ewing, in the principal sum of $1392, reciting that it was given for the purchase-money of a 4 per cent. installment certificate of Mechanics Loan & Savings Company; the guaranty written on the back of the note, described in the above statement, and signed by H. A. Ewing, W. W. Fain, Elmo Bell, P. E. McConnell, J. K. Castleberry, and H. H. Ewing; certificate No. 11794 in the principal amount of $1392, dated November 2, 1937, issued by Mechanics Loan & Savings Company and reading as follows: "This is to certify that H. A. Ewing is the holder of this four per cent. (4%) certificate of Mechanics Loan & Savings Company in the sum of $1392, for which he has given a note for the purchase-price thereof, payable $58 on the 22 day of each and every month, following the date hereof. The said holder of this certificate shall be entitled to receive four per cent. (4%) interest per annum thereon after the purchase-price is fully paid. Twenty-four months after date the Mechanics Loan & Savings Company will pay, as herein provided, the face value of this certificate, with whatever interest is due thereon. This certificate is issued under the provisions of Title 16, section 101 of the 1933 Code of Georgia (section 2878 of the 1926 Michie Code of Georgia), and subject to the terms and conditions of the charter, by-laws, rules, and regulations of Mechanics Loan & Savings Company, which are now in force or may hereafter be adopted, and is issued in connection with a loan this day made by said company for $1392 to H. A. Ewing. When due, said company shall apply the proceeds hereof to the payment of the note given for said loan." Also, transfer of said certificate by H. A. Ewing on the back thereof, under date of November 2, 1937; note for $1392, dated October 26, 1937, payable to the plaintiff, due two years after date, with interest from maturity at 8 per cent. per annum, signed by H. A. Ewing, W. W. Fain, Elmo Bell, P. E. McConnell, J. K. Castleberry, and H. H. Ewing; license dated January 1, 1937, issued to the plaintiff by John B. Wilson,

Secretary of State, countersigned by M. C. Bennett, chief examiner, authorizing the issuance of $190,000 worth of 4 per cent. savings certificates; subscription blank signed by H. A. Ewing for 4 per cent. installment certificate of the plaintiff in the sum of $1392 and dated October 26, 1937; receipt, on the bottom thereof, of certificate by H. A. Ewing; checks issued by the plaintiff for the amount loaned Ewing and for distribution to his creditors in addition to the sum of $38.24 given him.

Also, charter of the Mechanics Loan & Savings Company, dated May 5, 1920, order signed by a judge of the superior court of Fulton County, the powers granted being as follows: The capital stock was fixed at $15,000 with the privilege of increasing the same not in excess of $500,000, the principal business of the corporation to be that of lending money, with or without security, the general powers of a corporation being granted, including the right to accept in payment of stock certificates money or property or other things of value; amendment of charter under date of November 27, 1920, under order of court, upon application reading in part: "Petitioner now desires to amend its charter so that in addition to the powers already given, it will have the right and authority to do a general savings and loan business, and among other things to lend its funds to members of the industrial and working classes or others, and secured, in whole or in part, by personal indorsements and its own fully paid or installment stock, or its own fully paid or installment certificates of indebtedness or other personal property and choses in action; and that it be authorized to loan money to persons not members thereof nor shareholders therein, in the manner provided by section 2878 of the Code of Georgia of 1910, as amended by the acts of the legislature of Georgia, approved August 15th, 1910, and August 16th, 1913 [Code of 1933, §. 16-101]; to issue and sell different classes of stock and to issue certificates of indebtedness, either or both, at such time, in such manner, and under such rules and regulations as the board of directors of said corporation may decide." Also, copy of bill of sale of certain household furniture and furnishings and one 1936 Chevrolet standard coach, signed by H. A. Ewing, as security for payment of note given for installment certificate; affidavit of H. A. Ewing, on back of bill of sale, as to being owner of the "unencumbered title" to the property described in the bill of sale, and reciting that af-

fidavit was made for the purpose of securing the loan described and was a material inducement to the making of the loan by the Mechanics Loan & Savings Company; original trover proceeding and bail thereon filed in the case of Mechanics Loan & Savings Company against Mrs. H. A. Ewing on March 9, 1939, in the municipal court of Atlanta; the trover proceeding without bail against Mrs. Ewing for the household goods but with bail feature as to the automobile; letter dated October 22, 1938, from Mechanics Loan & Savings Company, addressed to Herman A. Ewing, maker or principal, and Elmo Bell, J. K. Castleberry, H. H. Ewing, W. W. Fain, and P. E. McConnell, guarantors, testified by N. A. Moore as having been mailed to H. A. Ewing at his place of business and returned undelivered; ledger sheet showing a balance of $928 due on the principal amount of $1392 for purchase of certificate, plaintiff having shown by amendment that there had been paid on the note sued on the total sum of $464 and $26 interest.

It is contended by plaintiffs in error that under the evidence the court should have submitted the case to the jury, and especially since in overruling the plaintiff's demurrer to their answer it was thereby adjudicated that valid and legal defenses were set up; that evidence was introduced in support of these defenses; that it appeared without contradiction that the defendants were sureties and not guarantors, and were released from liability, because the plaintiff failed to avail itself of the securities; that there was only one transaction between the plaintiff and H. A. Ewing, namely, the making of a loan of $1200 to him, and no bona fide purchase of an installment certificate; that for signing the note sued on the defendants received no consideration; that the jury should have determined whether or not they were sureties and whether or not the note sued on was based on a valuable consideration, it appearing that the certificate was issued, not for the purpose of selling Ewing a certificate, but as a "surface method" of having the same transferred back to the plaintiff as collateral; that, having no value as property, it could provide no security for the loan made, and that it was never intended, even upon payment of the note sued on, that Ewing should receive anything of value; that there was only one debt, the loan note, and that as Ewing could have shown that the relationship between himself and the plaintiff was that of debtor and creditor and that the consideration for executing the loan note

was the receipt of $1200 to pay his debts, and the certificate had no present or potential future value, such a defense would be likewise available to the defendants as sureties; that the transaction was clearly illegal in that in lending money to Ewing the plaintiff's act under the powers of a building and loan association as provided in Code, § 16-101, which authorizes the lending of its funds to members of the industrial and working classes in whole or in part by personal indorsements, violated the statute for the reason that the loan was to be repaid in twenty-four monthly installments, whereas, it is averred, such payments could not legally be made to extend beyond twelve months. These contentions may be disposed of in the following general discussion. It clearly appears from the evidence, that before Ewing was delivered any money or checks as the proceeds of a loan, it was necessary for him to enter into a contract of purchase of a 4 per cent. installment certificate; that the right of the plaintiff to sell such a certificate arose by virtue of a license issued by the Secretary of State; that the note with the guaranty of the defendants is not the note given for the loan but for the purchase-price of the certificate; and that the loan note was not due at the time of the trial. While it is pointed out by plaintiffs in error that the loan note is in the amount of $1392 and contains interest in the sum of $192, which it is alleged is usurious, all to be paid off by the installments received on the alleged purchase-price of the certificate, the interest is merely an amount which is calculated at 8 per cent. on $1200 for two years, and no payment on the loan note is to be made until two years after its date. The total amount to be then paid is no more than would be paid on a note showing the principal as $1200 with interest at 8 per cent. per annum, payable in two years from its date. But it is contended, in effect, that the payments specified in the note sued on were really applied in reduction of the loan note and amounted to usury. However, from the ledger sheet of the company, as well as the testimony of the manager of the company, it is shown that they were applied against the purchase-price of the certificate, No. 11794, issued under date of November 2, 1937, and for which the note sued on was given.

Having established that the loan note itself was not infected with usury, an examination will now be made as to the legality of that part of the proceedings whereby Ewing applied for a 4 per cent.

installment certificate and one was issued in the sum of $1392, where a note was executed by him in this·sum, being the purchase-price less a cash payment of $27.84, the note being payable in twenty-four installments of $58 each with interest of $3.25, the total agreed interest to be $78, and where he transferred the certificate back to the plaintiff as security for the payment of the loan note. Under its charter, the license issued by the Secretary of State, and the provisions of Code, § 16-101, the plaintiff, being, as to a regular building and loan association, a "like association," was authorized to issue and sell a 4 per cent. installment certificate in the manner of a true building and loan association and to lend its funds to members of the industrial and working classes. The certificate purchased by Ewing for $1392, and for which he gave a note, provided for the payment of 4 per cent. interest per annum only after the purchase-price was fully paid. This was a matter of contract, prohibited by no statute, and would be binding between the parties. In these circumstances there certainly could be no presumption that such certificate would bear interest from date.

The Code, § 16-101, provides in part: "All building and loan associations, and other like associations doing business in this State (and the term 'other like associations' shall include a corporation organized to do a general savings and loan business, and among other things lending its funds to members of the industrial and working classes, or others, and secured in whole or in part by personal indorsements and its own fully paid or installment stock, or its own fully paid or installment certificates of indebtedness, or other personal property), are authorized to lend money to persons not members thereof, nor shareholders therein, at eight per cent. or less, and to *aggregate the principal and interest at the date of the loan for the entire period of the loan,* and to divide the sum of the principal and the interest for the entire period of the loan into monthly or other installments, and to take security by mortgage with waiver of exemption or title, or both, upon and to real estate situated in the county in which said building and loan association may be located." (Italics ours.) But it is further provided: "Provided, however, the associations shall not be compelled to lend their funds exclusively in the manner hereinbefore specified, but also shall have authority to make loans to members of the industrial and working classes and to all other persons, due at fixed in-

tervals not exceeding 12 months, and secured in whole or in part by personal indorsements and by its own fully paid stock, or stock payable on the installment plan, certificates of indebtedness, fully paid or payable on the installment plan, or both indorsements and such securities, or other personal security and choses in action, and on such loans so made and secured as aforesaid, it shall be lawful to deduct interest in advance, but not to exceed eight per cent. discount, and the installment payments, if any, made on such hypothecated stock or certificates of indebtedness during the time the loan is of force may or may not bear interest, at the option of the association, and the taking of said installment payments on said hypothecated stock, certificates of indebtedness, choses in action, or other evidences of indebtedness shall not be deemed usurious." Code, § 16-102, provides: "All contracts made and securities taken in accordance with this chapter shall be valid for the full amount of principal and interest charged, and shall not be held usurious." It is thus seen that under Code, § 16-101, two methods of making a note may be used, one in which the interest for the full period is aggregated with the principal, and where no maturity limit is specified, and another in which the interest is deducted from the amount of the loan in advance, but where the installment payments are fixed at intervals not exceeding twelve months. The note for the loan did not, in the present case, provide for installment payments, but only for payment, at the end of two years, of an amount which would be the equivalent of $1200 plus interest at 8 per cent. per annum for two years and was authorized under the first part of the Code section. The limitation contended for by the plaintiffs in error has reference only to notes in cases where the interest has been deducted in advance.

The evidence in the present case shows that Ewing dealt with the plaintiff in two different capacities, in which there was no inconsistency, one in which, as authorized by law, the plaintiff sold him a 4 per cent. installment certificate, which when fully paid would entitle him to draw 4 per cent. interest per annum thereon, and another in which the plaintiff lent him a sum of money at 8 per cent. per annum. The fact that to secure the two notes the purchaser transferred the certificate back to the plaintiff, an act authorized under the statute, does not have the effect of converting an otherwise legal contract of purchase into a transaction which

is usurious merely because, in addition to paying 8 per cent. per annum interest on the amount of money delivered to him after the purchase of the certificate, Ewing had also obligated himself to pay interest on the monthly installments of the purchase-money note. *Gore* v. *Industrial Loan & Savings Co.*, 52 *Ga. App.* 401, 405 (183 S. E. 499).

The defendants in their original answer recognized that they signed the purchase-money note as guarantors, setting up, however, that they were induced to sign by representations that collateral·sufficient to discharge the indebtedness had been taken by the plaintiff. The evidence entirely fails to sustain such contention. By amendment, without striking any part of the original answer, they set up that they signed as sureties. Even if it could be said that they signed as sureties, their contention that their risk had been increased and they should be discharged from liability because, as averred, the plaintiff failed to avail itself of the security covered by the bill of sale, is without merit, inasmuch as the note not only provided that the payee was not obliged to foreclose on the collateral but could release it, and could file suit without first foreclosing. Equally untenable is the contention that the note here involved was shown to be without consideration. The certificate, a thing of value, capable of being owned and possessed by Ewing when fully paid and when it had served its purpose as security, and yielding 4 per cent. interest per annum, was obviously a good and sufficient consideration for the note. The recited consideration in the defendants' agreement, the acceptance of the note by the plaintiff, was sufficient to support the obligation assumed by them.

Under the ruling in *Gore* v. *Industrial Loan & Savings Co.*, supra, the interest of $3.25 to be paid on each installment of the purchase-price of the certificate was lawful. In that case the purchaser contracted to pay the purchase-price of a $100 certificate in twelve monthly installments with interest, designated as "premium," of 66 2-3 cents per month. It was held that as that sum per month amounted only to $8 for the year on the $100 certificate it was not more than the maximum allowed by law on the installments. In the present case the purchaser of the certificate obligated himself to pay monthly installments of $58 with monthly interest of $3.25 until the entire purchase-price was paid in

twenty-four installments. The total of the principal to be paid in one year was $696, and 8 per cent. per annum on that amount would be $55.68. Twelve monthly payments of $3.25 would amount to only $39, and, therefore, being less than $55.68, would, under the ruling in the *Gore* case not be unlawful. The purchaser had paid, on August 8, 1938, $464 on the purchase-price of the certificate. He had paid $26 interest, which was all that was due on the installments. Therefore, he owed, as testified by the manager of the seller, and as shown by copy of ledger sheet introduced in evidence, a balance of $928 on the principal amount, plus the stipulated monthly interest, for which a verdict in favor of the plaintiff was demanded. The court directed a verdict for only $802.10 principal and $52.27 interest, besides attorney's fees of $160.87. Inasmuch as the total of principal and interest for which the verdict was directed was only $854.37, and was less than the balance due on the principal amount of the certificate, and the amount of the attorney's fees was less than that to which the plaintiff, under the contract, was entitled, the defendants can not be heard to complain of any error in the verdict. It follows from the above that the trial court did not err in overruling the defendants' motion for new trial.

Because of the above ruling it is unnecessary to pass on the assignments of error in the cross-bill of exceptions.

*Judgment affirmed on the main bill of exceptions, cross-bill dismissed. Stephens, P. J., concurs.*

FELTON, J., dissenting. The Code, § 16-101, does not authorize the charge of more than 8 per cent. straight interest on a note given for the purchase-price of a certificate of indebtedness. The note in this case provides for the payment of $78 interest in any event, and 8 per cent. interest in the event of default in the payment of any installment. The loan company was authorized to issue 4 per cent. certificates of indebtedness. The presumption is, until shown to have been otherwise authorized by law, that the certificates should bear interest at 4 per cent. per annum from the date of their issuance. A note, well secured, was taken for the so-called purchase-price of the certificate in this case, and it was treated as fully paid for by the borrower even though it was not paid for in money, and was accepted by the company as collateral for a loan. A provision in the certificate sold was that it was not

to bear interest until paid for. The maturity date as set out in the certificate was two years from its date, if the installments were paid promptly, and sooner if there was a default in the payment of any of the installments. In no event except in case of default and forced payment before normal maturity could the borrower draw interest on the certificate, because the loan became due in two years and the certificate provided that its proceeds must be applied on the loan note, which means that the loan note is paid by cancellation of the certificate. My view of this is that the certificate was fully paid for when the company took a note for the purchase-price thereof, regardless of the fact that the note was payable in installments. That this is true is further evidenced by the fact that the company accepted such certificate as collateral security for a loan made to the purchaser of the certificate. The purchaser, under these circumstances, was entitled to the interest provided by the certificate from the date of its issue at the rate of 4 per cent., and the deprivation of the borrower of the interest on the certificate increases the interest on the "certificate purchase note" to a rate in excess of 8 per cent., which is unlawful, as a result of which the lender forfeits all interest due under the contract. I am further of the opinion that the note for the purchase-price of the certificate was without any legal consideration. "Purchase-price" implies that something is bought and sold. If a thing is bought and sold the seller at some time must part with his rights in it and the purchaser at some time acquires his unconditional right, if the contract of purchase is carried out. There was no sale of the certificate in this case because the purchaser never had the right to pay for his certificate and put it in his pocket and carry it home or put it in the bank in his lock-box. Under its terms the certificate had to be applied to the payment of the loan note when it became due. The loan note became due at the same time the certificate note became fully paid up if the payments were made when due.

Giving the act the construction the majority opinion gives it simply means, to my mind, that the legislature has authorized the sale of a worthless piece of paper, bearing no interest, which no one but the company could own, and has authorized an interest charge on the installments paid on the purchase-price of this worthless paper. When a transaction like this takes place, either the

certificate is bought and sold and paid for by a note well secured, in which the right and title thereto passes to the buyer to such an extent that it is the only security for a loan made on the value of it, and as a result of which the purchaser is entitled to 4 per cent. interest from the date of the certificate, or, there is no sale of anything of value, and the certificate is not worthy to bear interest, and the whole transaction is a complicated framework of camouflage to authorize the charge of 20 to 30 per cent. interest. To say that it is ingenious is to put it mildly. Here is the transaction: A borrows $1200 and gives his note therefor, due in two years. To this note the interest at 8 per cent. is added, and the note is in the sum of $1392. At the same time A is required to purchase a certificate of indebtedness (4%). This certificate is in the sum of $1392, and for the purchase-price thereof A gives his note for $1392, and this note bears interest in a sum certain of $78, and in the event of default in *any* payment, interest at 8 per cent. from the date of the note. The certificate provides that it is to bear interest from the date its purchase-price is fully paid at 4 per cent. All of the installment payments made to the company are credited on the certificate note, and when that note is finally paid it extinguishes the loan note and the certificate. It will be seen here that, going no further, a charge of more than 8 per cent. has been made, because the borrower has been forced to pay the certificate note to which has been added the 8 per cent. interest on the amount of the loan for two years, and which note itself bears interest at the rate of 8 per cent. from date in the case of a default in even the last installment, and $78 interest if the installments are paid as they become due. But this transaction goes further. The company does not treat the giving of the note for the purchase-price of the certificate as payment, but treats each installment as being a payment thereon, and in this way deprives the borrower of the interest on his certificate at the rate of 4 per cent. for two years. A little simple calculation shows us that in this way interest in excess of 20 per cent. can very easily be charged in the transaction. I do not think the legislature has to resort to obstruse mechanics and higher mathematics to authorize a charge of more than 8 per cent. interest. It may do so in plain words and without apology. I can ascribe to the legislature no intention to permit what was done in this case. At the most, I think it authorized the lending

of money secured by certificates lawfully owned by borrowers, whether they were paid for fully in cash or by note for install- ments. I think "installment certificates" are fully paid certificates under the circumstances of this case. In this case the certificate itself shows that it has not been sold, and that the transaction is simply a device to charge more than 8 per cent. on money bor- rowed, for the reason that the certificate provides that "when due, said company *shall* apply the proceeds hereof to the payment of the note given for said loan." It has been held by this court that the words, "and the installment payments, if any, made on such hy- pothecated stock or certificates of indebtedness during the time the loan is of force may or may not bear interest, at the option of the association," refer to the installments paid into the loan companies by the purchasers of the certificates (*Gore* v. *Industrial Loan & Savings Co.,* 52 *Ga. App.* 401, supra); and therefore do not au- thorize the withholding by the companies of the interest to be paid on the certificates. I am of the opinion that there is no liability on the note sued on, for the reason that it is wholly without valid consideration, because it was given under an unauthorized scheme to charge an excessive interest rate.